J-S26031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.J.R.-J., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.A.J., JR., FATHER | : : : : : : | |
| | : | No. 2619 EDA 2017 |

Appeal from the Order Entered July 31, 2017
in the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000288-2017

BEFORE:   BENDER, P.J.E., BOWES, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JUNE 05, 2018**

Appellant, L.A.J., Jr. ("Father"), files this appeal from the order entered July 31, 2017, in the Philadelphia County Court of Common Pleas, granting the petition of the Department of Human Services ("DHS") and involuntarily terminating his parental rights to his minor, dependent child, C.J.R.-J. ("Child"), a female born in September of 2013, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1]  After review, we affirm.

The trial court summarized the relevant procedural and factual history, in part, as follows:

> The Philadelphia Department of Human Services ("DHS") first became aware of this family in October 2015 when it received

---

* Former Justice specially assigned to the Superior Court.

[1] By separate order entered the same date, the trial court involuntarily terminated the parental rights of Child's mother, S.M.R. ("Mother").  Mother has not filed an appeal and is not a party to the instant appeal.

several reports concerning allegations that [] Child's mother did not have adequate housing, that [] Child was being inappropriately disciplined, and that [] Child sustained injuries as a result of the inappropriate discipline. The reports were validated and indicated the mother as the alleged perpetrator. Based on the allegations in the reports, DHS obtained an Order of Protective Custody ("OPC"), and [] Child was removed from the mother's home on October 13, 2015.

Following a shelter care hearing for [] Child on October 15, 2015, the Honorable Richard Gordon granted temporary legal custody to DHS and placed [] Child with family friend, [M.R.]. Following the shelter care hearing, DHS filed a dependency petition for [] Child based on the information discussed *supra*. Father was not present at the shelter care hearing. The Honorable Glynnis Hill subsequently held an adjudicatory hearing on October 20, 2015 and adjudicated [] Child dependent based on the mother's present inability. At the adjudicatory hearing, Judge Hill discharged the temporary commit [sic] and granted full legal and physical custody of [] Child to DHS. Father was not present at the adjudicatory hearing. An initial permanency hearing was held on January 12, 2016, at which time the goal was identified as reunification.

On March 7, 2017, DHS filed a petition to change the goal from reunification to adoption. A Goal Change hearing (the "TPR" Hearing[]) was held before this [c]ourt on July 31, 2017.[2] At the TPR hearing, the Community Umbrella Agency ("CUA") social worker, Erica Lewis, testified that [] Child has been in foster care since her initial placement on October 13, 2015. Ms. Lewis further testified that Father did not have single case plan objectives because the agency did not know much about Father; however, Father was referred to the Achieving Reunification Center ("ARC") for housing, employment, parenting classes, and drug and alcohol treatment. In regards to Father's compliance with the ARC referral, Ms. Lewis testified that Father was non-compliant. For example, Father did not complete parenting classes nor did he participate in drug and alcohol treatment. Also, Ms. Lewis indicated that she could not confirm whether Father had adequate housing because Father would not allow her to assess his home.

---

[2] Child was represented by a Guardian *ad litem* and counsel at the hearing. Both were in agreement as to the termination of Father's parental rights. Notes of Testimony ("N.T."), 7/31/17, at 4, 39.

In regards to Father's visitation with [] Child, Ms. Lewis testified that, since [] Child's initial placement on October 13, 2015, Father has only visited [] Child twice. Both of those supervised visits occurred after the goal change petition was filed. Ms. Lewis further testified that Father admitted that he has been aware of [] Child's placement since October 2015.[3] Furthermore, [] Child's maternal grandmother was granted visits with [] Child in December 2016. According to Ms. Lewis, Father indicated that he sporadically visited [] Child at the maternal grandmother's home.[4] Additionally, when asked about the parent-child bond, Ms. Lewis testified that Father has never shown an interest in caring for [] Child. Ms. Lewis further testified that [] Child is not bonded with Father and does not look to Father to meet her daily needs.

Moreover, Father testified that he has been caring for [] Child since [] Child's birth. Father also indicated that he has been providing [] Child's mother with money to care for [] Child despite knowing that the mother had not been caring for [] Child since October 2015. Father testified that he believed that [] Child's mother was giving the money to [] Child's caregiver. Father also testified that he did not currently have permanent housing. When asked by this [c]ourt what he has done in the last two years, Father replied: "Trying to get myself together."

Trial Court Opinion ("T.C.O."), 9/18/17, at 1-4 (citations to record omitted) (footnotes omitted).

On July 31, 2017, the trial court terminated the parental rights of Father under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5) and (8) and finding, in accordance with 23 Pa.C.S.A. § 2511(b), that termination best serves the developmental, physical, and emotional needs and welfare of Child.

---

[3] Child was placed with her godmother, M.R., from original placement in October 2015 until June 2017. N.T. at 20.

[4] While the trial court refers to maternal grandmother here, the testimony reveals that this was Child's maternal great-grandmother. *Id.* at 25-26, 30.

On August 9, 2017, Father filed a *pro se* notice of Appeal along with a Concise Statement of Errors Complained of on Appeal, in which Appellant did not raise any issues for review on appeal but indicated that he had attempted to contact counsel to no avail. On October 2, 2017, this Court remanded the case to determine whether counsel had abandoned Father after also failing to file a docketing statement. In an order dated October 12, 2017, the trial court determined that counsel had abandoned Father and appointed new counsel for purposes of appeal. By order dated November 14, 2017, this Court directed new counsel to submit a Rule 1925(b) statement by November 27, 2017. New counsel filed a statement on November 28, 2017.

As an initial matter, we note that Father's counsel failed to properly file a timely 1925(b) statement in violation of this Court's order. In a similar case, *In re J.T.*, 983 A.2d 771 (Pa. Super. 2009), this Court discussed whether a mother's untimely filing of her Rule 1925(b) statement precluded appellate review of her appeal of the termination of her parental rights:

> Pennsylvania Rule of Appellate Procedure 1925 ... require[s] that in a Children's Fast Track appeal the [concise statement must] be filed and served with the notice of appeal. Pa.R.A.P. 1925(a)(2). Appellant did not do so. ... Therefore, we must consider whether the untimely filing precludes appellate review.
>
> In **Commonwealth v. Lord**, 719 A.2d 306 (Pa. 1998), the Supreme Court of Pennsylvania stated that Rule 1925(b) established a clear rule for waiver as it stated that any issues not raised in a court-ordered Rule 1925(b) statement will be considered waived on appeal. In **Commonwealth v. Butler**, 812 A.2d 631 (Pa. 2002), the Supreme Court held that this waiver is automatic and applies regardless of whether the opposing party

raises the waiver issue and regardless of whether the trial court issued an opinion addressing the issues on appeal.

In **Commonwealth v. Burton**, 971 A.2d 428 (Pa. Super. 2009) (*en banc*), this court, based on a recent amendment of Rule 1925, held that in criminal cases late filing of the statement of errors complained of does not mandate a finding of waiver. The **Burton** decision is premised on the concept that late filing is *per se* ineffectiveness of counsel. The client should not be penalized by dismissal of his appeal as a result of deprivation of his constitutional right to effective counsel.

The unique nature of parental termination cases has long been recognized by the Supreme Court of Pennsylvania. Thus, **In re Adoption of R.I.**, 312 A.2d 601 (Pa. 1973), the Supreme Court held that an indigent parent in a termination of parental rights case has a constitutional right to counsel. The right to counsel in parental termination cases is the right to effective assistance of counsel even though the case is civil in nature. However, this right is more limited than that in criminal cases, as claims of ineffective assistance of counsel must be raised on direct appeal. We then review the record as a whole to determine whether or not the parties received a "fundamentally fair" hearing; a finding that counsel was ineffective is made only if the parent demonstrates that counsel's ineffectiveness was the cause of the decree of termination. If late filing of the 1925 statement waived [the m]other's appeal rights in this case, there has been *per se* ineffectiveness of counsel just as there was for the appellant in **Burton**. We conclude that, as in **Burton**, in parental termination cases a late filing of a required 1925 statement does not mandate a finding of waiver.

**In re J.T.,** 983 A.2d at 774–775 (some internal citations and quotations omitted) (internal footnotes omitted). Based on this Court's applicable holding in **In re J.T.**, we conclude that counsel's untimely filing of Father's Rule 1925(b) statement does not require the waiver of Father's claims on appeal in this case involving the termination of Father's parental rights.

On appeal, Father raises the following issues for our review:

1.	Did [DHS] sustain the burden that Father's rights should be terminated when there was evidence that Father had completed and/or had been actively completing his permanency goals?

2.	Was there sufficient evidence presented to establish that it was in the best interest of the child to terminate Father's parental rights?

Father's Brief at 4.[5]

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, [616 Pa. 309, 325, 47 A.3d 817, 826 (2012)]. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at [325-26, 47 A.3d at] 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)].

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence."

*In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted).

"[I]f competent evidence supports the trial court's findings, we will affirm even

---

[5] We observe that Father states his issues somewhat differently than in his Rule 1925(b) statement. We, nevertheless, find that Father has preserved his challenges to the trial court's order.

if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998)).

In the case *sub judice*, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well

as Section 2511(b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's termination orders pursuant to subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), and (b).

We first address whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to

be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)).

Moreover, this Court has emphasized that "[p]arents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities... [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, 797 A.2d at 340 (internal quotation marks and citations omitted).

In the case at bar, in finding grounds for termination pursuant to Section 2511(a)(2), the trial court reasoned as follows:

> Applying [*M.E.P.*] to the instant case, it is clear that DHS met their burden of demonstrating that termination was proper. The evidence established that "incapacity" under 2511(a)(2) existed given that Father failed to demonstrate a concrete desire or ability to remedy the problems that led to [] Child's placement. For instance, Father failed to cooperate with the ARC services, including parenting classes and drug and alcohol treatment. Father also failed to establish any stability in his life with regard to housing. Moreover, the evidence established that "neglect" existed given that Father only visited [] Child two times in the past two years. This [c]ourt found that Father's failure to fully comply with CUA and consistency [sic] visit [] Child has left [] Child

- 9 -

without essential parental care, and the cause of such neglect, refusal and continued incapacity will not be remedied by Father. Based on the foregoing, this [c]ourt found that competent evidence existed to justify the termination of Father's parental rights pursuant to Section 2511(a)(2).

T.C.O. at 7 (citations to record omitted).

Father argues that DHS failed to prove grounds for termination pursuant to Section 2511(a)(2) as he was never given single case plan objectives. However, the record reveals Father's lack of contact and cooperation with the agency and lack of compliance with ARC referral despite agency outreach. Specifically, CUA case manager, Erica Lewis, testified that no single case plan objectives were set for Father as not much was known about Father as he disregarded and ignored agency outreach through phone calls and text messages. N.T. at 27, 29-30. Father was referred to ARC for housing, employment, parenting classes, and drug and alcohol assessment and/or treatment, but he failed to comply. *Id.* at 27. Further, Ms. Lewis indicated that Father would not allow her to assess his house. *Id.*

Moreover, the record further reveals Father's lack of contact with and interest in Child. Although Father was admittedly aware of Child's placement since October 2015, he only attended two supervised visits at the agency after June 29, 2017. *Id.* at 25, 36-37. Ms. Lewis indicated that Father had claimed to see Child when he would sporadically go to maternal great-grandmother's home, who was granted monthly visitation in December 2016. *Id.* at 25-26. Notably, Ms. Lewis confirmed that Father never showed any interest in Child. *Id.* at 29.

As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006). Hence, the record substantiates the conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused Child to be without essential parental control or subsistence necessary for her physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. Moreover, Father cannot or will not remedy this situation. *See id.* Thus, our review of the record supports the trial court's finding of grounds for termination under Section 2511(a)(2). As we discern no abuse of discretion or error of law, we do not disturb the court's findings.

As noted above, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a) before assessing the determination under Section 2511(b), and we, therefore, need not address any further subsections of Section 2511(a). *In re B.L.W.*, 843 A.2d at 384.

We next determine whether termination was proper under Section 2511(b). Our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such

- 11 -

as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M. [a/k/a E.W.C. & L.M. a/k/a L.C., Jr.]*, [533 Pa. 115, 123, 620 A.2d 481, 485 (1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 620 Pa. at 628-29, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted).

Moreover,

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219 (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)) (quotation marks and citations omitted).

In the case *sub judice*, in determining that termination of Father's parental rights favors Child's needs and welfare under Section 2511(b) of the Adoption Act, the trial court stated as follows:

> In the instant matter, this [c]ourt determined that [] Child would not suffer irreparable emotional harm if Father's parental rights were terminated. [] Child is three years old and has been in the custody of DHS and the care of her foster parent for almost two years. There was compelling testimony offered at the TPR hearing that: [] Child is not bonded with Father. Furthermore, this [c]ourt found Father's sporadic visits with [] Child insufficient to foster a meaningful and healthy parental connection. This [c]ourt also found Father's testimony unreasonable. For example, Father testified that he has been giving [] Child's mother money to care for [] Child. This testimony was contradicted by the fact that Father also testified that he has been aware of [] Child's placement since October 2015. This [c]ourt found it unreasonable that Father would give [] Child's mother money for [] Child despite knowing that the mother was not caring for [] Child. Additionally, in determining that termination would best serve the needs and welfare of [] Child, this [c]ourt gave great weight to social worker's testimony that [] Child has been in her foster home for most of her life and that Father has only seen [] Child twice in the past two years. For the foregoing reasons, this [c]ourt properly granted DHS's petition to terminate the parental rights of Father pursuant to Section 2511(b).

T.C.O. at 10-11 (citations to record omitted).

Father disputes the trial court's findings and argues that "there was insufficient evidence to establish that it was in the best interest of the child to be adopted." Father's Brief at 12. Father takes issue with the fact that the trial court found no bond between him and Child based upon the testimony of the agency worker only without a specific bonding evaluation. *Id.* at 12-13.

Upon review, we again discern no abuse of discretion. The record supports the trial court's finding that Child's developmental, physical and

emotional needs and welfare favor termination of Father's parental rights pursuant to Section 2511(b). There was sufficient evidence to allow the trial court to make a determination of Child's needs and welfare, and as to the lack of a bond between Father and Child such that, if severed, would not have a detrimental impact on her.

Significantly, at the time of the hearing, Child, who was nearly four years old, had been in placement for almost two years. N.T. at 24. Ms. Lewis testified that Child does not look to Father to meet her daily needs. *Id.* at 27. Moreover, there was no contact between Father and Child from her placement in October 2015 to December 2016. *Id.* at 26. As indicated above, Ms. Lewis noted that Father informed her that he would sporadically go to maternal great-grandmother's home, who was granted monthly visitation in December 2016. *Id.* at 25-26. She further recognized only two supervised visits between Father and Child at the agency. *Id.* at 25. As such, Ms. Lewis opined there is no parent-child relationship between Father and Child. *Id.* at 27.

While Father may profess to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. At the time of the hearing, Child had been in care half of her young life, and is entitled permanency and stability. As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties,

- 14 -

to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted).

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Father's parental rights under 23 Pa.C.S.A. § 2511(a)(2) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/18

- 15 -